IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KINGDOM, INC., | : | No. 4:CV-08-1039 |
| | : | |
| Plaintiff, | : | (Judge McClure) |
| | : | |
| v. | : | |
| | : | |
| PRO MUSIC GROUP, LLC, | : | |
| | : | |
| Defendant. | : | |

**M E M O R A N D U M**

August 22, 2008

**BACKGROUND:**

On May 28, 2008, plaintiff, Kingdom, Inc., commenced this action with the

filing of a five count complaint against defendant Pro Music Group, LLC.  In its

complaint, Kingdom alleges that Pro Music's  use of the trademark "KingdomPro"

infringed upon its trademark "Kingdom."  Plaintiff has set forth causes of action

based on the Lanham Act, including trademark infringement (15 U.S.C. § 1114)

(Count I), false designation of origin and unfair competition (15 U.S.C. § 1125(a))

(Count II), and trademark dilution and tarnishment (15 U.S.C. § 1125(c)(1))

(Count III), as well as state causes of action for trademark dilution (54 Pa. C.S.A. §

1124) (Count IV) and common law unfair competition (Count V).  On June 17,

2008, Kingdom filed a motion for a preliminary injunction seeking to enjoin Pro

Music's use of the trademark "KingdomPro." (Rec. Doc. No. 2.)

On July 31, 2008, a hearing was held on Kingdom's motion for a preliminary injunction. Based on the findings of fact and conclusions of law set forth below, we conclude that Kingdom is entitled to injunctive relief and will preliminarily enjoin Pro Music from using the trademark "KingdomPro."

On August 11, 2008, Kingdom filed a post-hearing brief concerning Pro Music's hearsay objections (Rec. Doc. No. 41), and a supplement to exhibits of Kingdom in support of its motion for preliminary injunction (Rec. Doc. No. 42). Then, on August 14, 2008, Pro Music filed objections to Kingdom's post-hearing brief and supplement to exhibits (Rec. Doc. No. 43) and on August 20, 2008, Kingdom filed its response to the foregoing objections (Rec. Doc. No. 44).

In its objections, Pro Music contends that the filing of the post-hearing brief was improper, as the court had not requested any supplemental briefing on the hearsay objections made at the hearing on July 31, 2008. However, the court did expressly permit supplemental proposed conclusions of law, and under a liberal construction of "conclusions of law", this additional brief is accepted. On the other hand, Pro Music also objects to plaintiff's supplement to exhibits, which included a declaration of John Berguson, dated August 11, 2008, and also a declaration of Rachael Berguson, dated August 8, 2008, together with attachments. The court did

2

not invite the filing of supplemental evidence, and the objections will be sustained in this regard, as these declarations are not subject to cross examination and are, therefore, not only untimely, but inadmissible hearsay.  The court has not read the declarations and Rec. Doc. No. 42 has not been considered in the preparation of this memorandum.

**FINDINGS OF FACT:**

Kingdom is a company of 145 employees located in Mansfield, Pennsylvania which sells a wide variety of audio and visual products to the religious community, such as microphones, speakers, and instruments.  (Tr. of July 31, 2008, Rec. Doc. No. 38, at 8, 17.)  It was founded in 1982 by John Berguson who began by selling audio tapes and books to Christian readers and churches under the name "Kingdom Tapes."  (Id. at 7-13.)  Today, Kingdom has gross sales that exceed twenty million dollars per year.  (Id. at 45.)  It mails two million product catalogs per year to 100,000 to 250,000 churches throughout the country.  (Id. at 8-10.)   It maintains a website which is located at www.kingdom.com.  (Id. at 10-11.)  Finally, Kingdom attends four to six trade shows every year and conducts product workshops for its customers throughout the country.  (Id. at 11-12.)  The Kingdom mark is a strong mark with a great reputation in the church

marketplace.  (Id. at 70-78.)

On March 10, 2003, Kingdom filed an application with the United States Patent and Trademark Office (USPTO) for the mark Kingdom.  (Id. 13-14.)  On December 27, 2005, the USPTO issued United States Trademark Registration No. 3,034,139 for the mark "Kingdom."  (Id.)

Kingdom uses various modifiers with its mark Kingdom.  As mentioned, it first began selling products under the name Kingdom Tapes and many of its customers still refer to Kingdom as Kingdom Tapes.  (Id. at 13-14.)  It also uses the modifiers Kingdom Printing, KingdomPro, Kingdom View, Kingdom Images, Kingdom Supreme, Kingdom Gold, Kingdom Computers.  (Id.)  With respect to its use of KingdomPro, it would sell blank CD and DVD labels under this name.  (Id. at 15.)  It began using this modifier in August of 2004 and has used it continuously since that date.  (Id.)

Defendant Pro Music Group has been in business for more than thirty years. (Dep. of Janet Hundertmark, Pl.'s Ex. 20, at 6-7.)  It has historically sold sound, lighting, and stage equipment to various businesses.  (Id.)  In August 2007, Pro Music began using the name KingdomPro as a trade name in which it would focus sales efforts specifically in the church worship market.  (Id. at 10-13.)  It created a website of www.kingdompro.com and began distributing product catalogs under

this name.  (Id. at 10.)  Janet Hundertmark, the CFO of Pro Music who was involved in the decision to use the name KingdomPro, was aware of Kingdom Tapes when the name was adopted by Pro Music.  (Id. at 18-19.)

On July 21, 2006, Pro Music filed an application with the USPTO for registration of the mark KingdomPro.  (Def.'s Ex. A.)  On December 18, 2006, the USPTO issued an Examiner's Amendment for Pro Music's application in which an examiner concluded that no similar registered or pending mark had been found that would bar registration.  (Def.'s Ex. B.)  On February 14, 2007, the USPTO issued a Notice of Publication in which Pro Music's application was to be published in the Official Gazette on March 6, 2007.  (Def.'s Ex. C.)  On May 29, 2007, the USPTO issued a Notice of Allowance which stated that no opposition was filed by any member of the public objecting to the registration of "KingdomPro."  (Def.'s Ex. D.)  On July 29, 2008, the USPTO issued United States Trademark Registration No. 3478265 for the mark "KingdomPro."  (Def.'s Ex. II.)

In April 2008, Kingdom first became aware of the use of KingdomPro by Pro Music when it received a KingdomPro catalog in the mail.   (Tr. of July 31, 2008, Rec. Doc. No. 38, at 18.)  Since ProMusic began use of the mark KingdomPro, Kingdom's sales have decreased and it may have to layoff workers. (Id. at 21-23.)

Finally, we note that Kingdom has provided the court with a CD copy of several recorded phone calls from long-time customer Robert Jones. (Pl.'s Ex. 17-19.) In these calls, Jones calls Kingdom to order a product for his church. (Id.) His confusion is evident as it is soon revealed that he is attempting to order a product from Kingdom using the KingdomPro catalog. (Id.)

**DISCUSSION:**

### I. Admissibility of the Robert Jones Recorded Telephone Calls

As a preliminary matter, we note that at the hearing on plaintiff's motion for a preliminary injunction, defendant objected to plaintiff's use of the recorded telephone calls from Robert Jones to Kingdom on the basis that they constituted hearsay. We deferred ruling on the issue at the hearing and will now overrule defendant's objection.

Plaintiff presented these conversations as evidence of the likelihood of customer confusion, which is an element of a trademark claim. In <u>Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City</u>, the Third Circuit ruled on a similar issue. 383 F.3d 110, 132-33 (3d Cir. 2004). Specifically, the court concluded that bank tellers testifying about their experiences with customers confused between the two banks that were parties to the case was not hearsay

because the tellers were simply describing their personal experiences with customers, rather than testifying to out-of-court statements asserted for their truth. Id. at 133.  Furthermore, the court noted that to the extent any of the statements could be deemed hearsay, Rule 803(3) of the Federal Rules of Evidence is a hearsay exception for the declarant's then-existing state of mind.  Id. (citation omitted).  This case is directly on point with the instant issue.  For the same reasons as mentioned by the Third Circuit in Citizens Financial Group, we conclude that to the extent the recordings could be deemed hearsay, Rule 803(3) would allow their admission into evidence to show the declarant's then-existing state of mind.

## II.  Preliminary Injunction Analysis

In order to obtain a preliminary injunction, the moving party must show (1) a reasonable probability of success on the merits, (2) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.  See Crissman v. Dover Downs Entm't, Inc., 239 F.3d 357, 364 (3d Cir. 2001); BP Chemicals, Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000); Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989). Establishing a risk of harm is not enough.  Hohe, F.2d at 72 (3d Cir. 1989).  The

moving party has the burden of proving a "clear showing of immediate irreparable

injury." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359

(3d Cir. 1980)(citation omitted).  The "requisite feared injury or harm must be

irreparable not merely serious or substantial," and "must be of a peculiar nature, so

that compensation in money cannot atone for it."  Glasco v. Hills, 558 F.2d 179,

181 (3d Cir. 1977).  Further, the irreparable harm must be actual and imminent, not

merely speculative.  See Raitport v. Provident National Bank, 451 F.Supp. 522,

530 (E.D.Pa. 1978).  Such relief is not appropriate to "eliminate the possibility of a

remote future injury . . ."  Id.  (quoting Holiday Inns of America, Inc. v. B & B

Corp., 409 F.2d 614, 618 (3d Cir. 1969)).

A.  Likelihood of Success on the Merits

It has been long established that trademark law "protects trademark owners

in the exclusive use of their marks when use by another would be likely to cause

confusion."  Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462 (3d Cir. 1983).  To

make out a successful claim of trademark infringement, a plaintiff must

demonstrate that (1) its mark is valid and legally protectable; (2) it owns the mark;

and (3) the defendant's use of the mark to identify its goods or services is likely to

create confusion concerning the origin of those goods or services.  Commercial

Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 437 (3d Cir.

2000) (citation omitted).

It appears clear that plaintiff has a valid and legally protectable mark in the name Kingdom that it began using well before defendant began using the mark KingdomPro. Indeed, it has continuously used the mark since 1982 and it was registered with the USPTO in 2005. Thus, this is sufficient to satisfy the first two requirements of an infringement claim.

We also believe that plaintiff has demonstrated a likelihood of showing that defendant's use of the KingdomPro mark is likely to cause confusion with customers. In Lapp, the Third Circuit set out ten factors to consider whether there is a likelihood of customer confusion: (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts

suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that it is likely to expand into that market. 721 F.2d at 463 (citations omitted).  Yet, we note that the <u>Lapp</u> test is a qualitative inquiry and that not all factors are relevant in all cases.  <u>Checkpoint Sys v. Check Point Software Technologies, Inc.</u>, 269 F.3d 270, 280 (3d Cir. 2001) (citation omitted).

We now turn our consideration to the first <u>Lapp</u> factor, which is the degree of similarity between the marks.  When the marks directly compete, this may be the most important factor of the ten factors.  <u>Id.</u> at 281. (citation omitted).  The test for such similarity is whether the marks create the same overall impression when viewed separately.  <u>A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.</u>, 237 F.3d 198, 217 (3d Cir. 2000) (quotation omitted).  Marks are confusingly similar if ordinary consumers would likely conclude that the two products share a common source, affiliation, connection or sponsorship.  <u>Id.</u>  To do this, courts employ a "sight, sound and meaning" test of the competing marks.  <u>Id.</u>

We believe that the marks Kingdom and KingdomPro are nearly identical when you consider the sight, sound, and meaning of the two marks.  The only difference in the sight and sound is the short modifier of Pro on the end of defendant's mark.  In fact, it is noteworthy that Kingdom actually used the

10

KingdomPro mark for the sale of its blank CD and DVD labels.  Similarly, the

meaning of both marks is clearly the use of the word "Kingdom" in a religious

context.  We also note that the importance of this factor is increased greatly

because plaintiff and defendant sell the exact type of products to the exact same

type of customers.  Both sell audio/visual products such as microphones, speakers,

and video projectors to churches and other religious organizations.  In fact, we

have reviewed both plaintiff's  and defendant's catalogs and found them to be

extremely similar in all respects.  Therefore, for all of these reasons, we conclude

that this factor weighs strongly in favor of concluding that plaintiff has

demonstrated a likelihood of showing that defendant's use of the KingdomPro

mark is likely to cause confusion with customers.

We also find that the sixth factor, which is evidence of actual confusion,

weighs in favor of plaintiff.  First, we note that the Third Circuit has commented

that evidence of actual confusion is often difficult to find because such confusion

goes unreported.  Checkpoint Sys., 269 F.3d at 291.  For this reason, such evidence

is highly probative of the likelihood of confusion.  In the instant case, Robert

Jones, a long-time customer of plaintiff, called plaintiff to order a product and was

clearly confused in the audiotape of the call because he was attempting to order a

product from defendant's catalog.  It is hard to imagine a clearer instance of

customer confusion stemming directly from the similarity of two marks. Therefore, this factor weighs highly in favor of plaintiff as well.

Furthermore, we find several other factors that weigh in favor of plaintiff. The Kingdom mark is clearly a strong mark for the sale of audio/visual products in the religious community and has been used by plaintiff since the 1980s. This satisfies the second factor. Defendant did not provide any evidence of use of the KingdomPro mark without causing confusion. This causes the fourth factor to weigh in favor of plaintiff. Furthermore, we note that the products offered by plaintiff are not extremely expensive. This results in a lack of a sophistication on the part of the customer, which means he or she is more likely to be confused. Checkpoint Sys., 269 F.3d at 284 (citation omitted). Therefore, the third Lapp factor weighs in favor of plaintiff as well. Finally, although there is no direct evidence that defendant's intent when adopting the mark KingdomPro was to infringe upon plaintiff's mark, there exists the circumstantial evidence that defendant was aware of Kingdom Tapes when it adopted the name, which is the name that plaintiff's customers often use to refer to Kingdom. The fifth Lapp factor therefore weighs slightly in favor of plaintiff as well. Similarly, because plaintiff and defendant sell the exact same type of product to the same type of customers, the targets of their sales efforts and the relationship of the goods in the

minds of consumers are the same. This causes the eighth and ninth <u>Lapp</u> factors to weigh in favor of plaintiff as well. Finally, we note that because the parties directly compete, the seventh <u>Lapp</u> factor is not relevant to our analysis.

Additionally, we note that the fact that USPTO made a determination that there were no similar registered or pending marks to "KingdomPro" and then permitted defendant to register the mark is entitled to little weight. In <u>KOS Pharmaceuticals, Inc. v. Andrx Corp.</u>, the USPTO had approved the defendant's mark for publication and the plaintiff subsequently brought an infringement claim. 369 F.3d 700, 714-15 (3d Cir. 2004). The Third Circuit gave little weight to the USPTO's determination, noting that the record contained no information about the basis for the USPTO's decision or what information was before the examining attorney at the time the decision was made. <u>Id.</u> at 714. Similarly, there was no evidence that the examining attorney specifically considered plaintiff's mark and found it not to be confusingly similar. <u>Id.</u> at 714-15. In fact, the court stated that even if there was evidence that the examining attorney explicitly considered the plaintiff's mark, the initial USPTO determination may be considered but need not be given weight when the examining attorney did not review all of the evidence available to the District Court. <u>Id.</u> at 715.

Because we conclude that plaintiff owns a valid and legally protectable mark

and because every relevant <u>Lapp</u> factor weighs in favor of concluding that there is

a strong likelihood of customer confusion, we conclude that plaintiff is likely to

succeed on the merits of its claims.

B.  Remaining Preliminary Injunction Factors

Having made the initial determination that plaintiff has shown a reasonable

probability of success on the merits, we believe the remaining analysis is quite

simple.  As for the likelihood that plaintiff will be irreparably harmed if we do not

issue an injunction, we find that it will.  In order to show irreparable harm, a

plaintiff must demonstrate that it will suffer harm that cannot be redressed by a

legal or equitable remedy following trial if the preliminary injunction is not issued.

<u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 801 (3d Cir. 1989).

In the context of a trademark infringement case, loss of market share, loss of

goodwill, and loss of control of reputation are all harms that cannot be redressed by

a legal or equitable remedy following trial.  <u>Novartis Consumer Health, Inc. v.

Johnson & Johnson-Merck Consumer Pharmaceuticals Co.</u>, 290 F.3d 578, 596 (3d.

Cir. 2002).  We believe that our conclusion that there is a strong likelihood of

customer confusion necessarily means that plaintiff is likely to suffer loss of

market share, goodwill and control of reputation.  Furthermore, we note that

plaintiff provided evidence that its sales have decreased since defendant began

using the name KingdomPro.  Therefore, we believe this factor of the analysis is easily satisfied.

As for the harm that may be suffered by defendant if we do issue the injunction, we find that although it may likely suffer harm if we enjoin it from using the name KingdomPro, this injury is discounted by the fact that defendant voluntarily elected to use this trademark and has therefore brought this injury upon itself.  Novartis Consumer Health, 290 F.3d at 596 (citation omitted).

Finally, we conclude that there is no doubt that the public interest lies in favor of granting the preliminary injunction.  This factor is often described in the context of a trademark infringement case as the right of the public not to be confused.  Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 197 (3d Cir. 1990).  Because we have already concluded that customers are likely to be confused by defendant's use of the mark "KingdomPro," the issuance of an injunction preventing it from doing so will prevent this confusion.

**CONCLUSION:**

For the reasons we have mentioned, we conclude that plaintiff Kingdom is entitled to injunctive relief and will preliminarily enjoin defendant Pro Music from using the trademark "KingdomPro."


           s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KINGDOM, INC.,                          :              No. 4:CV-08-1039
                                        :
          Plaintiff,                    :              (Judge McClure)
                                        :
     v.                                 :
                                        :
PRO MUSIC GROUP, LLC,                   :
                                        :
          Defendant.                    :

**O R D E R**

August 22, 2008

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT;**

1.    Plaintiff Kingdom's Motion for a Preliminary Injunction is

      GRANTED.  (Rec. Doc. No. 2.)

2.    The court will therefore issue a preliminary injunction enjoining the

      defendant from the use of the name "KingdomPro" or any other name

      that closely resembles the name "Kingdom" if plaintiff gives security

      in an amount that the court considers proper to pay the costs and

      damages sustained by the defendant if found to have been wrongfully

      enjoined or restrained, in accordance with the requirements of Fed. R.

17

Civ. P. 65(c).

3.      In this regard, the parties are directed to use all reasonable efforts to

stipulate to the amount and form of the security to be given and file a

stipulation to that effect.

4.      If no stipulation can be reached, then each party is directed to file on

or before September 3, 2008 a statement setting forth its proposed

amount and form of the security and the reasons for the same.  The

court will thereafter promptly fix the amount of the security and issue

the injunction upon approval and acceptance of the appropriate

security.


   s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge